IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BRUCKNER TRUCK SALES, INC., | § | |
| BRUCKNER LEASING CO., INC., and | § | |
| AMERICAN RADIO CORPORATION, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:20-CV-180-M-BQ |
| | § | |
| HOIST LIFTRUCK MFG, LLC and | § | |
| HOIST MATERIAL HANDLING, INC., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Hoist Liftruck Mfg., LLC's (Hoist)[1] and Hoist Material

Handling, Inc.'s (Hoist Material) Joint Motion to Transfer Venue and Compel Arbitration, or,

Alternatively, to Dismiss Plaintiffs' Original Petition, along with their brief and appendix in

support. ECF Nos. 9, 10, 11. Plaintiffs Bruckner Truck Sales, Inc. (Bruckner), Bruckner Leasing

Co., Inc. (Bruckner Leasing), and American Radio Corporation (ARC) filed their response and

appendix in support (ECF Nos. 18, 19), to which Defendants filed a reply. ECF No. 23. The

motion is now ripe for decision. After reviewing the parties' briefing and applicable law, the

undersigned recommends that the United States District Judge **GRANT in part** Defendants' Joint

Motion to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Plaintiffs'

Original Petition, and transfer this action to federal district court in the Northern District of Illinois,

Eastern Division. ECF No. 9.

---

[1] Hoist's proper legal name is "6499LMVEM2, LLC (fka Hoist Liftruck Mfg., LLC)." Defs. Hoist Liftruck Mfg., LLC and Hoist Material Handling, Inc.'s Joint Mot. to Transfer Venue and Compel Arbitration, or Alternatively, to Dismiss Pls.' Original Pet. 1, ECF No. 9 [hereinafter Defs.' Mot.]. The Court refers to Defendant as "Hoist."

## I.    Background

Bruckner and Hoist executed a Non-Exclusive T-Series Dealer Sales and Service Agreement (Agreement) in November 2017. App. in Supp. of Defs.' Joint Mot. to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Pls.' Original Pet. 5–18, ECF No. 11 [hereinafter Defs.' App.]. Bruckner Leasing and ARC are not parties to the Agreement. *Id.* Under the Agreement, Bruckner purchased ten Hoist T-Series tractors (*id.*) and subsequently sold eight of the ten to its customers, including Bruckner Leasing and ARC. Pls.' Resp. and Br. to Defs.' Joint Mot. to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Pls.' Original Pet. 2, ECF No. 18 [hereinafter Pls.' Resp.]. The Agreement includes a warranty provision stating that "[Hoist] warrants to [Bruckner] and through [Bruckner] to the first purchaser from [Bruckner] for use that . . . [Hoist] will discharge its warranty obligations in accordance with the terms, conditions and limitations of the [Hoist] warranty applicable to the product." Defs.' App. 12. "Bruckner notified its customers of a warranty on the Hoist Tractors, but did not provide its customers with a copy of the Dealer Agreement between Bruckner and [Hoist]." Pls.' App. in Supp. of their Resp. and Br. to Defs.' Joint Mot. to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Pls.' Original Pet. 2, ECF No. 19 [hereinafter Pls.' App.].

According to Plaintiffs, the tractors "experienced significant problems and contained many manufacturing defects, which led the tractors to break down numerous times." Pls.' Resp. 2. Plaintiffs assert that Bruckner Leasing and ARC "would rely on Bruckner . . . to perform the service and repairs" and "[p]ursuant to the Dealer Agreement, Bruckner submitted warranty work and services to Defendants for reimbursement." *Id.* at 3. Plaintiffs allege that "Bruckner was in contact with Hoist regarding the deficiencies and grossly defective nature of the Hoist Tractors on a regular basis." *Id.* Subsequent to the parties' execution of the Agreement, Hoist entered into an

Asset Purchase Agreement with Hoist Material, and Bruckner consented to assignment of the Agreement. Defs.' App. 20–21. After Hoist Material assumed the Agreement, according to Plaintiffs, Hoist Material proposed "re-working" the tractors but never did so. Pls.' Resp. 3.

Plaintiffs filed suit against Defendants in the 47th District Court, Randall County, Texas, on June 19, 2020. Pls.' Original Pet. 4–11, ECF 1-3 [hereinafter Pet.].[2] Plaintiffs served Defendant Hoist Material on June 22, 2020. ECF No. 1, at 1. Shortly thereafter, Defendants removed this case from state court to the United States District Court for the Northern District of Texas, Amarillo Division. *Id.* Defendants then filed their Joint Motion to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Plaintiffs' Original Petition. ECF No. 9.

Under the Original Petition, Plaintiffs collectively bring two claims against Defendants: breach of contract and a request for attorneys' fees. Pet. 10. Plaintiffs allege that Defendants provided a warranty to Bruckner, Bruckner Leasing, and ARC, and subsequently breached the warranty thereby violating the contract. *Id.* The claims asserted in Plaintiffs' Original Petition rely exclusively on warranties contained in the Agreement. *Id.* at 6.

In the motion now before the Court, Defendants primarily argue that Plaintiffs' claims "arise out of, or otherwise relate to, the Dealer Agreement" itself, and the Agreement's forum-selection clause therefore mandates transfer to the Northern District of Illinois, Eastern Division. Br. in Supp. of Defs. Hoist Liftruck Mfg., LLC and Hoist Material Handling, Inc.'s Joint Mot. to Transfer Venue and Compel Arbitration, or Alternatively, to Dismiss Pls.' Original Pet. 1–2, ECF No. 10 [hereinafter Defs.' Br.]. Defendants further allege that the Agreement's arbitration clause likewise requires claims arising from or relating to the Agreement to be arbitrated in Illinois. *Id.* As a result, Defendants ask the Court to enforce the forum-selection clause and transfer this suit

---

[2] Page citations to the Petition refer to the electronic page number assigned by the Court's electronic filing system. Citations to the parties' briefing refer to the cited document's internal pagination.

to Illinois under 28 U.S.C. § 1404(a), and concurrently compel the parties to arbitrate, or alternatively, compel arbitration and dismiss this case with prejudice for "improper venue" under Federal Rule of Civil Procedure 12(b)(3). *Id.* at 7–21.

Plaintiffs principally argue in response that the Court should deny Defendants' motion because the non-signatory Plaintiffs—Bruckner Leasing and ARC—are not parties to the Agreement and do not seek to enforce the Agreement. Pls.' Resp. 1. Plaintiffs allege that Bruckner, the signatory plaintiff, is not bound by the arbitration clause because it is unconscionable. *Id.* at 9. Defendants' request to transfer this case to the Northern District of Illinois, Plaintiffs contend, is improper because the Agreement "itself does not contemplate the Northern District of Illinois as an allowable and agreed upon venue within the [forum-selection] clause." *Id.* at 16. Plaintiffs assert that "[e]ven if some, but not all, Plaintiffs are subject to arbitration, the Court should adjudicate all Plaintiffs' claims collectively in this Court" because "[i]t would serve judicial efficiency to hear Plaintiffs' claims collectively." *Id.* at 10. In addition, Plaintiffs argue that the Court should not dismiss this case under Federal Rule of Civil Procedure 12(b)(3) because the United States Supreme Court has held that the rule "may not be used as a mechanism to enforce a forum selection clause," and "a motion under 28 U.S.C. § 1404(a) is the proper mechanism for analyzing whether to transfer a case based on a valid forum selection clause." *Id.* at 17. In the event that "Plaintiffs' Original Petition does not make clear that the Non-Signatory Plaintiffs' claims against Defendants are based in breach of warranty and do not rely on the Dealer Agreement, Plaintiffs seek leave to amend their Original Petition." *Id.* at 10–11.

In reply, Defendants maintain that the issue is simple and the analysis straightforward. They aver that "Plaintiffs' Response re-confirms that the breach of contract claim is based on the Dealer Agreement" and that Plaintiffs "simply cannot reap the benefits (the warranties) of the

Dealer Agreement and avoid what they now see as burdens (the Illinois forum-selection, Illinois choice-of-law, and Illinois arbitration provisions)." Defs.' Reply Br. in Supp. of Defs.' Joint Mot. to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Pls.' Original Pet. 2, ECF No. 23 [hereinafter Defs.' Reply Br.]. Defendants further ask the Court to deny Plaintiffs' request to amend their petition. *Id.* at 8–9. According to Defendants, Plaintiffs "indicate they want to to [sic] 'make clear'—contrary to the express assertions of their [Petition]—that the first purchasers' claims are not based on the Dealer Agreement." *Id.* Plaintiffs' request to amend their petition, Defendants argue, is an "undeveloped, last-gasp request" that "fails for lack of any argument or authority." *Id.* at 9. Accordingly, Defendants re-urge the Court to "enforce the parties' forum-selection clause and transfer this case to the U.S. District Court for the Northern District of Illinois, as well as order that Plaintiffs arbitrate their claims in Illinois in accordance with the mandatory arbitration clause contained in the Dealer Agreement." *Id.* Alternatively, Defendants ask the Court to compel arbitration and dismiss the action after the conclusion of arbitration. *Id.*

## II.   **Discussion**

### A. The Agreement

The Agreement contains several clauses relevant to the issues before the Court: limitation of warranties, binding arbitration, submission to jurisdiction and venue, and governing law. Defs.' App. 12–14. The warranties clause states that "[Hoist] warrants to [Bruckner] and through [Bruckner] to the first purchaser from [Bruckner] for use that [Hoist] will discharge its warranty obligations in accordance with the terms, conditions and limitations of the [Hoist] warranty applicable to the product." *Id.* at 12. The clause further provides, in part, as follows:

> [Hoist's] sole and exclusive equipment and parts warranties are limited to the express written warranties set forth in [Hoist's] product warranty policy or expressly contained in purchase orders. . . . The products' warranties are exclusive and are in lieu of all other representations and warranties, whether expressed or

implied, written or oral, including without limitation, implied warranties of merchantability or fitness for a particular purpose.

*Id.* The arbitration clause requires that the parties submit to arbitration "[a]ll disputes arising under [the] Agreement or related to [the] Agreement, or breach thereof." *Id.* at 14. "The place of arbitration shall be DuPage County, Illinois" and, per the Agreement, "the parties irrevocably waive all other venues for dispute." *Id.* The forum-selection clause reflects that the parties agreed to "the jurisdiction of dispute resolution in DuPage County, Illinois." *Id.* Under this clause, "[Bruckner] . . . irrevocably waives, to the fullest extent permitted by law, any objection . . . to remove the action or proceeding, once commenced, to another venue on the grounds of forum *non conveniens* or otherwise," and further "agrees not to institute any legal action or proceeding against [Hoist] . . . arising out of or relating to [the] Agreement, in any venue other than the ones [herein] specified." *Id.* In addition, the governing law clause mandates that the "Agreement shall be construed in accordance with the law of the State of Illinois and [Bruckner] waives the application of any other state's laws." *Id.*

**B. Transfer**

Defendants move to transfer this case to the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1404(a), in accordance with the Agreement's forum-selection clause. Defs.' Br. 7.[3] In response, Plaintiffs argue that "Defendants' request for transfer is improper because the forum-selection clause they seek to invoke does not allow for transfer to the Northern District of Illinois, Eastern Division." Pls.' Resp. 16. Plaintiffs further contend that Bruckner, the signatory Plaintiff, is not bound by the Agreement because it is "unenforceable," and the non-signatory Plaintiffs, Bruckner Leasing and ARC, are likewise not bound by the forum-selection clause because neither are parties to the Agreement. *Id.* at 15.

---

[3] DuPage county lies within the Eastern Division of the Northern District of Illinois. *See* 28 U.S.C. § 93(a)(1).

"[F]ederal law, specifically 28 U.S.C. § 1404(a), governs . . . whether to give effect to the

parties' forum-selection clause." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988). The

United States Supreme Court has explained that a "motion to transfer under § 1404(a) . . . calls on

the district court to weigh in the balance a number of case-specific factors" and that the "presence

of a forum-selection clause . . . will be a significant factor that figures centrally in the district

court's calculus." *Id.* at 29. "Section 1404(a) therefore provides a mechanism for enforcement of

forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S.*

*Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). The Supreme Court has made clear

that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should

ordinarily transfer the case to the forum specified in that clause. Only under extraordinary

circumstances . . . should a § 1404(a) motion be denied." *Id.* at 62 (footnote omitted).

District courts considering a § 1404(a) motion, in the absence of a forum-selection clause,

"must evaluate both the convenience of the parties and various public-interest considerations." *Id.*

"The calculus changes, however, when the parties' contract contains a valid forum-selection

clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting

*Stewart*, 487 U.S. at 31). Thus, when examining a motion to transfer in light of a valid and

enforceable forum-selection clause, a court's § 1404(a) analysis changes in three ways:

> First, the plaintiff's choice of forum merits no weight. . . . Second, a court
> evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection
> clause should not consider arguments about the parties' private interests. . . . As a
> consequence, a district court may consider arguments about public-interest factors
> only. . . . Third, when a party bound by a forum-selection clause flouts its
> contractual obligation and files suit in a different forum, a § 1404(a) transfer of
> venue will not carry with it the original venue's choice-of-law rules—a factor that
> in some circumstances may affect public-interest considerations.

*Id.* at 63–64 (citations omitted); *see also Thornton v. Syny Logistics, Inc.*, Civil Action No. 3:19-

CV-2047-N, 2020 WL 2850989, at *1 (N.D. Tex. June 1, 2020). "In all but the most unusual

cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66.

> ### 1. *Bruckner has not shown that this is such an "unusual case" necessary to compel the Court to disregard the parties' bargain.*

Applying the *forum non conveniens* factors, Plaintiffs allege "Defendants cannot show that transferring to the Northern District of Illinois would be clearly more convenient as required by 28 U.S.C. § 1404(a)." Pls.' Br. 14. In Plaintiffs' view, Defendants bear the burden of demonstrating that the forum should be changed, and the Court should consider a series of public and private interest factors to determine if transfer is warranted. *Id.* at 12. The Court agrees to a point—in the absence of a forum-selection clause, this analysis would hold true. As *Atl. Marine* makes clear, however, the Court's consideration of a transfer request "changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" 571 U.S. at 63 (citing *Stewart*, 487 U.S. at 31). Under such circumstances, the plaintiff's forum choice merits no weight and the court primarily considers only public interest factors, not the parties' private interests. *Id.* at 63–64. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (internal quotation marks omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

"[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. Plaintiffs largely rely on private interest factors (Pls.' Resp. 13), which the Court may not consider. *Atl. Marine*, 571 U.S. at 63. According to Plaintiffs' analysis, only one of the public interest factors weighs against transfer: the local interest in having the case decided in Texas. Pls.' Resp. 14.

Plaintiffs assert that the case should be decided in the Northern District of Texas because it "involves defective tractors that were purchased, used, and serviced primarily in Texas." *Id.* Plaintiffs must do more than establish that some of the relevant events occurred in Texas—rather, "the party acting in violation of the forum-selection clause . . . bear[s] the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer." *Atl. Marine*, 571 U.S. at 67 (emphasis added).  Moreover, the local interest factor is not itself dispositive because it would "nullify the Supreme Court's clear directive to reserve, for truly exceptional cases, the step of disregarding the parties' agreement that a case should be litigated elsewhere." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016)).  And, as the Supreme Court observed, "[i]n all but the most unusual cases, . . . 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66.

Plaintiffs have not shown that this is an unusual case and the Court finds no other extraordinary circumstances that would compel the Court to disregard a contractually agreed upon forum-selection clause.  *See Link Am., LLC v. Infovista Corp.*, No. 3:16-CV-542-M, 2016 WL 3406114, at *3 (N.D. Tex. June 21, 2016) (concluding that the public-interest factors favored transfer because only one of the three factors, local interest, weighed against transfer); *see also Appliance All., LLC v. Sears Home Appliance Showrooms, LLC*, No. 3:15-CV-01707-M, 2015 WL 9319179, at *8 (N.D. Tex. Dec. 23, 2015) (granting motion to transfer where the case was "not such an exceptional case" to defy forum-selection clause).  Thus, if the forum-selection clause is valid and enforceable, the Agreement requires transfer to the Norther District of Illinois, Eastern Division.

**2. *The forum-selection clause is both valid and enforceable.***

In the presence of a valid and enforceable forum-selection clause, *Atl. Marine*'s § 1404(a)

analysis governs a party's motion to transfer. *See Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296,

301 (5th Cir. 2016) (noting that *Atl. Marine* assumed the forum-selection clause was valid); *see*

*also Thornton*, 2020 WL 2850989, at *1 ("28 U.S.C. § 1404(a) authorizes district courts to transfer

a case if the parties are bound by a valid and enforceable forum-selection clause that indicates a

different district."). Plaintiffs contend that the forum-selection clause is "unenforceable" and

Defendants' transfer request is "improper" because the forum-selection "clause itself does not

contemplate the Northern District of Illinois as an allowable and agreed upon venue." Pls.' Resp.

15–16. More specifically, the clause states that "the parties to the Dealer Agreement submit to the

jurisdiction of *dispute resolution* in DuPage County, Illinois." *Id.* (emphasis added). Plaintiffs

argue that "[d]ispute resolution is a term of art used in the legal profession that signifies an

alternative venue to a court." *Id.* at 16. In Plaintiffs' view, the forum-selection clause mandates

where the parties must *arbitrate* and not where the parties may file suit. *See id.*[4]

Consequently, Plaintiffs do not challenge the validity of the clause, but rather its

enforcement.[5] And because Plaintiffs do not challenge the validity of the forum-selection clause,

the Court need not consider this question, and may turn to whether the clause is enforceable. *See*

---

[4] The Court interprets Plaintiffs' argument as relating only to where the parties may arbitrate, not an assertion that the
"DuPage County, Illinois" language prohibits transfer to a *federal court*, as opposed to *state court*. Nevertheless, such
an argument would be unavailing—precedent within the Northern District of Illinois makes clear that a forum selection
clause specifying a county as an exclusive forum supports proper venue in federal district court. *See Playboy Enters.
Int'l, Inc. v. Smartitan (Singapore) PTE Ltd.*, 804 F. Supp. 2d 730, 737–38 (N.D. Ill. 2011) ("The language of the
forum selection clause clearly and unmistakably states that 'any and all disputes arising out of or relating in any way
to this [contract] shall be litigated only in courts sitting in Cook County, Illinois.' Therefore, venue in the Northern
District of Illinois is proper.").

[5] To the extent Plaintiffs question the clause's interpretation, a court's analysis in a diversity case is governed by the
forum state's choice-of-law rules in determining what substantive law controls (*see Barnett*, 831 F.3d at 302), which
the Court addresses fully in section II.B.2.a herein.

*Blue Racer Midstream, LLC v. Kelchner, Inc.*, Civil Action No. 3:16-CV-3296-K, 2018 WL 993781, at \*3 (N.D. Tex. Feb. 21, 2018) (noting that the defendant only challenged validity and did not argue that the forum-selection clause was unenforceable). Nevertheless, the Court will assume that Plaintiffs' enforcement argument concurrently encompasses a validity challenge and will first consider validity and then turn to enforceability.

### a. The forum-selection clause is valid under Illinois law.

To determine whether the forum-selection clause is valid, the Court must first consider the Agreement's choice-of-law provision. *See Barnett*, 831 F.3d at 301 (discussing what law to apply to enforceability versus validity challenges). As the Fifth Circuit noted in *Barnett*, neither the Supreme Court nor the Fifth Circuit has concluded what source of law governs the "validity" of a forum-selection clause. *Id.* "[T]he validity of a forum-selection clause is [arguably] a matter of substantive contract law, in which case, courts apply the body of law dictated by a state law's choice of law rules." *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-CV-2177-L, 2017 WL 106835, at \*2 (N.D. Tex. Jan. 11, 2017) (internal quotation marks omitted) (quoting *Barnett*, 831 F.3d at 301), *aff'd*, 2017 WL 3209399 (N.D. Tex. June 19, 2017). Conversely, "validity is [arguably] just part of the federal law of enforceability, which heavily favors forum-selection clauses." *Id.* (quoting *Barnett*, 831 F.3d at 302). Assuming that validity is distinct from enforcement, "it seems that the law applicable to that determination would be the same law applicable to forum-selection clause interpretation—that is, the law selected by the forum state's choice-of-law rules."[6] *Barnett*, 831 F.3d at 304. Accordingly, the Court now turns to the Agreement's choice-of-law provision to determine which substantive law to apply in evaluating the forum-selection clause's validity.

---

[6] Under federal law, however, the result would be the same. *See* section II.B.2.b.

The Agreement contains a choice-of-law clause, which provides that the "Agreement shall be construed in accordance with the law of Illinois." Defs.' App. 14. Defendants claim that this clause governs the substantive dispute between the parties. Defs.' Br. 10. Plaintiffs, however, argue that "[u]nder the *Erie* doctrine, federal courts sitting in Texas must apply the substantive law of Texas in diversity actions, including Texas choice-of-law rules." Pls.' Resp. 4. Plaintiffs further allege that "[w]ith respect to issues arising from contracts for services, the place of performance is usually the most significant contact" and therefore "the law of that jurisdiction will be applied." *Id.* at 4–5 (citing *Maxus Expl. v. Moran Bros.*, 817 S.W.2d 50, 57 (Tex. 1991) and *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex. 1990)).[7] Consequently, Plaintiffs contend that Texas substantive law should control because "[t]he majority of the repairs and service for the tractors were completed in Texas" and the non-signatory Plaintiffs purchased the Hoist tractors in Texas. *Id.* at 5.

The Court agrees with Plaintiffs' initial proposition—federal law requires that "[f]ederal courts sitting in diversity must apply the forum state's choice-of-law rules." *Demond v. Infiniti HR, LLC*, Civil Action No. 3:17-CV-1322-D, 2018 WL 4145053, at *3 (N.D. Tex. Aug. 30, 2018) (applying Texas law to determine if Maryland choice-of-law clause was enforceable). Texas courts "permit choice-of-law agreements and the default position is that they are enforceable." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015). "In cases with a choice-of-law provision in an agreement, protection of the justified expectations of the parties is the most significant and important factor in the choice-of-law analysis." *VTX Commc'ns, LLC v. AT&T*

---

[7] Plaintiffs cite factors identified in Restatement (Second) of Conflict of Laws, § 188, which governs the choice-of-law determination in the absence of a choice-of-law clause. In the presence of such a provision, however, the Court's analysis is governed by Restatement § 187. *See Maxus*, 817 S.W.2d at 53 (explaining that "[w]hen the parties to a contract . . . have not themselves chosen what law is to govern their agreement," Restatement § 188 controls the analysis); *Desantis*, 793 S.W.2d at 677–78 (applying Restatement § 187 where the contract contained a choice-of-law clause).

*Inc.*, Civil Action No. 7:19-CV-00269, 2020 WL 4465968, at *3 (S.D. Tex. Aug. 4, 2020) (citing

*Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 235 (Tex. 2008)).  Under Texas

law, Plaintiffs must satisfy the standards in Restatement § 187 to overcome the presumption that

the choice-of-law provision is valid.  *Id.* at 581.  Section 187 provides as follows:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187; *see also Desantis*, 793 S.W.2d at 677–78.

Assuming, in Plaintiffs' favor, that the issue is one which the parties could not have

resolved by an explicit provision in their agreement directed to that issue, the Court considers

whether Plaintiffs have satisfied subsection (2).[8]  *See Barnett*, 831 F.3d at 305 (assuming same);

*see also McKeehan v. McKeehan*, 355 S.W.3d 282, 292 (Tex. App.—Austin 2011, pet. denied)

(holding that the considerations in section 187(2) are "triggered only if the issue to be resolved

could not have been resolved by an explicit provision in the parties' agreement").

Plaintiffs have not cited subsection (2)(a), i.e., that there is no reasonable basis for the

parties' choice (*Cardoni*, 805 F.3d at 581), so the Court need not consider this ground for

---

[8] If the issue is one the parties could have resolved, the Court would apply Illinois law, as required by the choice-of-law provision. *See* Restatement § 187(1); *see also Barnett*, 831 F.3d at 305 n.6.

determining the forum-selection clause's enforceability. *See* Pls.' Resp. 4–5. Moreover, the record affirmatively demonstrates some reasonable basis for selecting Illinois because that is where the "Agreement was . . . negotiated and drafted" and Hoist is an Illinois citizen. *Cardoni*, 805 F.3d at 581; *see also* Defs.' App. 14; Defs.' Br. 2.

To defeat the choice-of-law provision under subsection 2(b), Plaintiffs must establish that Texas "(1) has a more significant relationship with the parties and the transaction at issue than [Illinois] . . . ; (2) has a materially greater interest than [Illinois] . . . does in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of [Illinois] . . . law." *Cardoni*, 805 F.3d at 582. Though Plaintiffs allege that "Texas has the most significant contacts with this dispute," Plaintiffs do not address the second factor, and they acknowledge that "Texas and Illinois law are very similar," thereby conceding that the third factor weighs against them. Pls.' Resp. 5, 14. Thus, Plaintiffs have failed to overcome the presumption that the choice of law provision governs because, at best, they only allege that one of the three factors weighs in their favor. *See CMA-CGM (Am.) Inc. v. Empire Truck Lines, Inc.*, No. 01-10-00077-CV, 2011 WL 1631961, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, pet. denied) (holding that courts "must enforce the parties' selection of . . . law unless all three elements of this test are satisfied").

Accordingly, the Court will interpret the forum-selection clause—including whether the clause relates only to arbitration—under Illinois state law. *See Demond*, 2018 WL 4145053, at *3 (concluding that "the forum-selection clause should be interpreted according to Maryland law" pursuant to the contract).[9]

---

[9] As reflected below, this analysis, and ultimate result, would be the same under Texas law. *See Marullo v. Apollo Associated Servs., LLC*, 515 S.W.3d 902, 904 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Courts interpret unambiguous forum-selection clauses according to their plain language under contract interpretation principles."); *see*

Illinois courts' "prime objective is to effectuate the intent of the parties"; courts therefore look to "the plain language of the contract" as "the best evidence of the parties' intent." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (citations omitted). Under Illinois contract interpretation principles, courts "look to the contract as a whole in interpreting its individual terms" and "whenever possible [courts] attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Id.*

The Northern District of Illinois considered the interaction between forum-selection clauses and arbitration clauses in *WFC Commodities Corp. v. Linnco Futures Grp., Inc.*, No. 98 C 1354, 1998 WL 834374 (N.D. Ill. Nov. 25, 1998). There, the parties executed a set of contracts in 1991 that contained arbitration clauses, and then entered into a second set of contracts in 1994 that contained forum-selection clauses but did not mention arbitration. *Id.* at *1. The earlier contracts "specif[ied] that any disputes would be arbitrated in front of an arbitrator under a particular set of rules, while the [later] contracts specif[ied] that any disputes would be litigated only in *courts* of the state of Illinois." *Id.* at *3. When a dispute arose between the parties over the latter contracts, the defendant filed a motion seeking to compel arbitration under the first contracts.

Applying Illinois law, the court found that the 1994 contracts superseded the first and, as a result, no current agreement existed between the parties to arbitrate their disputes. *Id.* In an attempt to avoid this finding, the defendant argued there was no inconsistency between the contracts and "that the forum selection clauses in the [later] contracts [did] not require litigation but only specifie[d] the venue" for arbitration. *Id.* The court disagreed, however, noting in dicta that the defendant's argument would "make[] the forum selection clauses superfluous" if all

---

*also Vak v. Net Matrix Sols., Inc.*, 442 S.W.3d 553, 559 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining that Texas courts' "primary goal is to give effect to the written expression of the parties' agreement").

disputes were to be arbitrated rather than litigated. *Id.* (contrasting location and procedure called for in arbitration clause with forum-selection language specifying litigation of all disputes "only in *courts* whose situs is within the State of Illinois").

Turning to the language of the Agreement, the Court determines that the forum-selection clause is independent of the arbitration clause and, thus, does not simply describe where the parties must arbitrate. First, the arbitration clause specifies that "[t]he place of arbitration shall be DuPage County, Illinois" and "the parties irrevocably waive all other venues for dispute." Defs.' App. 14. Because the arbitration clause itself already specifies where the parties should arbitrate, Plaintiffs' interpretation of the separate forum-selection clause would render it superfluous, as the court similarly observed in *WFC Commodities*. Second, while the forum-selection clause uses the language "dispute resolution," it also reflects that Bruckner "agree[d] not to institute any legal action or proceeding against [Hoist] . . . arising out of or relating to [the] Agreement, in any venue other than the ones [herein] specified." *Id.* Construing the clauses together, it is clear that the forum-selection clause requires "any legal action or proceeding"—including Bruckner's present claim—to be subject to the jurisdiction and venue of DuPage County, Illinois. *See WFC Commodities*, 1998 WL 834374, *3; *see also Nw. Nat'l. Ins. Co. v. Donovan*, 916 F.2d 372, 375–77 (7th Cir. 1990) (concluding that a contract stating "[v]enue, at the Company's option for litigation and/or arbitration, shall be in the County designated on the front page under the description of the Company's address," was a forum-selection clause granting personal jurisdiction over Texas litigants in the contracted forum).

Thus, the Court rejects Plaintiffs' argument that the forum-selection clause relates only to arbitration, and therefore concludes that the forum-selection clause is valid.

### b. The forum-selection clause is enforceable under federal law.

Having determined that the clause is valid, the Court next considers whether it is enforceable under federal law. *See Demond*, 2018 WL 4145053, at *5. Plaintiffs contend the forum-selection clause is unenforceable but cite no authority in support. Pls.' Resp. 15. "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth v. The Corporation of Lloyd's*, 121 F.3d 956, 963 (5th Cir. 1997)). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The party attacking the clause must overcome a presumption of enforceability by showing that it is "unreasonable." *Id.* To do so, the party must establish one or more of the following:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963).

Plaintiffs do not address these factors, nor do they allege that enforcement of the clause would be unreasonable under the circumstances. Rather, they generally assert that the forum-selection clause is "unenforceable." Pls.' Resp. 15. Accordingly, the Court determines that Plaintiffs failed to meet their burden to overcome the presumption of enforceability. Having determined that the forum-selection clause is both valid and enforceable, the Court next considers whether the clause is mandatory or permissive.

3.  *The Agreement's forum-selection clause is mandatory, rather than permissive, and thus requires any suit arising out of or relating to the Agreement to be brought in Illinois.*

A valid and enforceable forum-selection clause can be either mandatory, which *requires* a particular forum, or permissive, which *permits* a certain forum. *See Aerus LLC v. Pro Team, Inc.*, No. CIV.A. 304CV1985M, 2005 WL 1131093, at *4 (N.D. Tex. May 9, 2005). Courts considering whether a forum-selection clause is mandatory must apply applicable state substantive law to the language of the forum-selection clause. *Liverpool FC Am. Mktg. Grp., Inc. v. Red Slopes Soccer Found.*, Civil Action No. 4:17-CV-00756, 2018 WL 2298388, at *7 (E.D. Tex. May 21, 2018) (quoting *Weber*, 811 F.3d at 769).

As discussed above, Illinois substantive law governs the interpretation of the Agreement. Under Illinois law, "[a] forum selection clause is mandatory where its 'language is obligatory' and 'clearly manifests an intent to make venue compulsory and exclusive.'" *Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 936 (N.D. Ill. 2011) (quoting *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992)). Illinois courts look "at the plain meaning of the clause at issue" to determine whether a forum-selection clause is mandatory or permissive. *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1987). Where the clause uses language such as "shall" or "must," the forum is exclusive. *Id.* Conversely, a permissive forum-selection clause reflects that the parties agree to a particular forum, but do not waive the right to have an action heard elsewhere. *Cont'l Cas. Co. v. LaSalle Re Ltd.*, 500 F. Supp. 2d 991, 994 (N.D. Ill. 2007) (concluding that the forum-selection provision was not mandatory because "the clause merely states that the parties consent to the jurisdiction of the courts of the State of Illinois to resolve their disputes").

In *Calanca*, the court determined that it was "obvious" the forum-selection clause was mandatory from "the plain meaning" of its language. *Calanca*, 510 N.E.2d at 23.  The clause in question provided that the "proper forum . . . shall be the Circuit Court for Jackson County, Wisconsin," and the court distinguished cases where the clause specified jurisdiction alone.  *Id.*

Here, Bruckner agreed to "the jurisdiction of dispute resolution in DuPage County, Illinois." Defs.' App. 14.  Under this clause, "[Bruckner] . . . irrevocably waive[d], to the fullest extent permitted by law, any objection . . . to remove the action or proceeding, once commenced, to another venue on the grounds of forum *non conveniens* or otherwise." *Id.*  Most significantly, Bruckner "agree[d] not to institute any legal action or proceeding against [Hoist] . . . arising out of or relating to [the] Agreement, in any venue other than the ones [herein] specified." *Id.*  The clause therefore not only specified jurisdiction, but also precludes Bruckner from filing any legal action or proceeding in a venue other than Illinois.  The forum-selection clause's language is obligatory and "'clearly manifests an intent to make venue compulsory and exclusive.'" *Schwarz*, 812 F. Supp. 2d at 936.  Because the forum-selection clause is valid, enforceable, and mandatory, it "should be 'given controlling weight . . . [absent] the most exceptional case[],'" *Saye v. First Specialty Ins. Co.*, No. 3:14-CV-202-M, 2014 WL 1386565, at *3 (N.D. Tex. Apr. 9, 2014) (quoting *Atl. Marine*, 134 S. Ct. at 579), which Plaintiffs have not established here.

### 4. Bruckner Leasing and ARC's claims arise out of or otherwise relate to the Agreement and the non-signatory parties are therefore bound by the forum-selection clause.

Having determined that Bruckner's claim is governed by the forum-selection clause, the Court next considers whether the non-signatory Plaintiffs, Bruckner Leasing and ARC, are similarly bound.  Plaintiffs allege that direct benefits estoppel—a theory Defendants contend bind the non-signatory plaintiffs to the Agreement—is not applicable because their claims "do not arise directly from the Dealer Agreement."  Pls.' Resp. 8.  They further assert that the non-signatory

Plaintiffs' "claims are warranty and defect claims that can stand alone without reference to any terms or conditions of the Dealer Agreement or the arbitration provision contained within the Dealer Agreement." *Id.* On the present record, the Court disagrees.

Illinois law governs interpretation of the forum-selection clause. *See DBS Sols. LLC v. Infovista Corp.*, No. 3:15-CV-03875-M, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2016). Under Illinois law, "a nonparty to a contract containing a forum selection clause can nonetheless be bound by that clause where the nonsignatory is closely related to the dispute such that it becomes foreseeable that it will be bound." *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 183 (Ill. App. Ct. 2014) (internal quotation marks omitted) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). Where a non-signatory is "closely related to the dispute[,] . . . it does not defy the non-signatory's reasonable expectations that it would be bound by the clause, just as the signatory parties are." *Id.* at 185. In such a circumstance, the "nonsignatory impliedly consents to the forum selection clause via its connections with [the] dispute, the parties, and the contract or contracts at issue." *Id.* "The nonsignatory need not also be deemed a third-party beneficiary of the contract in order for a court to find that the forum selection clause applies to it, although third-party beneficiary status would, by definition, satisfy the closely related and foreseeability requirements." *Id.* at 183 (internal quotation marks omitted) (quoting *Hugel*, 999 F.2d at 210 n.7).

Illinois law also recognizes direct benefits estoppel, which "prevents a non-signatory from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *See Elsasser v. DV Trading, LLC*, 444 F. Supp. 3d 916, 927 (N.D. Ill. 2020) (internal quotation marks omitted). "The touchstone of this form of estoppel . . . is whether the non-signatory has brought suit against the signatory premised upon the agreement

that contains the arbitration clause at issue, thus seeking the agreement's direct benefits." *Id.* (quoting *Transatlantic Reinsurance Co. v. Nat'l Indem. Co.*, No. 14 C 1535, 2014 WL 2862280, at *4 (N.D. Ill. June 24, 2014)). In *Elsasser*, the court noted that the "Plaintiffs want[ed] it both ways" because "[t]hey want[ed] to avoid the arbitration clause in the operating agreement . . . [but sought] a judgment" they allegedly could have obtained "under the operating agreement." *Id.* at 928. Although *Elsasser* concerns an arbitration clause, an arbitration clause is merely a type of forum-selection. *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630–31 (1985)). Thus, the court's discussion of direct benefits estoppel is nonetheless instructive as to application of the Agreement's forum-selection clause here.

    Under the Original Petition, Plaintiffs collectively bring two claims against Defendants: breach of contract and a request for attorneys' fees. Pet. 10. Plaintiffs rely exclusively on the Agreement in framing their claims, which provides that "[Hoist] warrants to [Bruckner] and through [Bruckner] to the first purchaser from [Bruckner] for use that [Hoist] will discharge its warranty obligations in accordance" with the contract. *Id.*; Defs.' App. 12. At the time of purchase, Bruckner notified Bruckner Leasing and ARC of this warranty provision. Pls.' App. 2 ("Bruckner notified its customers of a warranty on the Hoist Tractors, but did not provide its customers with a copy of the Dealer Agreement between Bruckner and [Hoist]."). Throughout the Petition, Plaintiffs make multiple references to the Agreement in support of their claim. *See* Pet. 6 ("Under the Dealer Agreement and applicable Warranty Policies, Hoist provided the following warranties . . . ."), 10 ("Hoist made the warranty to Bruckner, as well as to Bruckner's customers . . . [Plaintiffs] have been damaged by Defendants' breach of the agreement."), 10–11 ("Defendants' failure to comply with their obligations under the Dealer Agreement and Warranty

has made it necessary for Plaintiffs to employ the undersigned attorneys . . . . Defendants are, therefore, liable to Plaintiffs for reasonable attorneys' fees incurred through trial and any subsequent appeal."). It is clear that under the Original Petition, Bruckner Leasing and ARC seek to sue Defendants for breach of contract arising from their alleged failure to comply with the Agreement. **The undersigned therefore recommends that the United States District Judge GRANT Defendants' motion to transfer with respect to all Plaintiffs**.

### C. Amendment

In an attempt to avoid application of the forum-selection clause to the non-signatory Plaintiffs, Plaintiffs seek leave to amend their Original Petition to the extent it "does not make clear that the Non-Signatory Plaintiffs' claims against Defendants are based in breach of warranty and do not rely on the Dealer Agreement." Pls.' Resp. 10–11. Defendants argue in reply that Plaintiffs' request is an "undeveloped, last-gasp request" and "fails for lack of any argument or authority." Defs.' Reply Br. 9.

Under Federal Rule of Civil Procedure 15(a), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is not automatic, however, and decisions concerning motions to amend are left to the sound discretion of the court. *See Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). In so deciding, courts consider, *inter alia*, futility of the proposed amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). And under the Local Rules for the Northern District of Texas, when a party files a motion to amend a pleading, "the party must attach the proposed amended pleading to the motion as an exhibit." N.D. Tex. Local Rule 15.1(b).

As noted by Defendants, granting leave to amend on behalf of the non-signatory Plaintiffs in no way alters the Court's analysis or conclusions regarding Bruckner, the signatory Plaintiff who negotiated and executed the Agreement containing the forum-selection clauses.[10]  Moreover, the non-signatory Plaintiffs' desire to amend the Original Petition to "make clear that . . . [their] claims against Defendants are based in breach of warranty and do not rely on the Dealer Agreement" (Pls.' Resp. at 10–11) fails to provide an escape from the forum-selection clause. Other than a general assertion that the contemplated breach of warranty claim "do[es] not rely on the Dealer Agreement," Plaintiffs offer no argument showing *why* such a claim would not fall within the scope of the Agreement or *why* the forum-selection clause would not govern.

More importantly, even if the Court allowed an amendment at this time, any breach of warranty claim, either signatory or non-signatory, would still fall within the forum-selection clause under both federal and Illinois law.  "Claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Demond*, 2018 WL 4145053, at *4 (applying federal law) (citations omitted); *see Solargenix Energy, LLC*, 17 N.E.3d at 182 (noting that forum-selection clauses apply not merely to claims involving terms of the contract but also to other claims that are otherwise connected to or arise from the contract).  "If enforcement of a provision in the [Agreement] is . . . a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause." *Aerus*, 2005 WL 1131093, at *8 (citing *Penn, L.L.C. v. New Edge Network, Inc.,* No. 03 C 5496, 2003 WL 22284207, at *2 (N.D. Ill. Oct. 3, 2003)); *see Organ v. Byron*, 434 F. Supp. 2d 539, 542–43 (N.D. Ill. 2005) (applying forum-selection clause where the claims and the relief sought were "closely

---

[10] Defendants also point out that Plaintiffs did not file a formal motion for leave to amend.  While a proposed amended complaint would have provided more detail as to the precise nature of Plaintiffs' proposed claim, its presence, as illustrated by the Court's analysis below, is not necessary for proper application of the forum-selection clause.

related to the [contract] if not central to the claims and defenses") (citing *Penn*). Construing the non-signatory Plaintiffs' response as seeking to allege breach of a warranty beyond those expressly provided by the Agreement, i.e., an implied warranty,[11] such a claim would, as Defendants note, nevertheless "require interpretation of the terms of the Dealer Agreement, including the First Purchaser provision *and the warranty limitation terms*." Defs.' Reply Br. 8 (emphasis added). For this reason alone amendment would be futile with respect to determining the forum-selection clause's applicability to the non-signatory Plaintiffs' proposed claim. *See Aerus*, 2005 WL 1131093, at *8 (applying forum-selection clause to patent infringement claim where one of the defendant's defenses was based on language in the contract at issue); *see also Excentus Corp. v. Giant Eagle, Inc.*, Civil Action No. 3:11-CV-3331-B, 2012 WL 2525594, at *4 (N.D. Tex. July 2, 2012) (applying contract's forum-selection clause where party's asserted defenses required court to consider terms of the agreement in question).[12]

More fundamentally, a claim for breach of an implied warranty can also be said to "arise out of" the parties' contractual relationship. "An implied warranty arises under . . . [Illinois] law pursuant to section 2–314 of the Uniform Commercial Code . . . i.e., [a]n implied warranty of merchantability is created in a contract for the sale of goods, unless modified or excluded . . . ." *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 74 (Ill. App. 1st Dist. 2001). Hence, any implied warranties related to the tractors flow from, and are a legal consequence of, the parties' Agreement and would be subject to the forum-selection clause. *See, e.g., Laibe Corp. v. Gen. Pump & Well, Inc.*, 733 S.E.2d 332, 334–35 (Ga. App. 2012) (vacating lower Georgia court's order

---

[11] The Court construes Plaintiffs' response as referencing an implied warranty claim as they seek to "make clear" the breach of warranty "do[es] not rely on the Dealer Agreement." Pls.' Resp. at 10–11.

[12] The Court makes no finding as to the Agreement's limitation on any potential implied warranty claim, but merely acknowledges its impact on the forum-selection analysis, i.e., that it purports to limit Plaintiffs only to claims for breach of express warranties provided under the Agreement.

denying motion to dismiss breach of implied warranty claim where the parties' contract contained a forum-selection clause requiring claims "arising under" contract to be brought in Indiana).[13]

Accordingly, under the record as developed, both the signatory and non-signatory Plaintiffs' claims should be transferred to Illinois.[14]  Should Plaintiffs' choose to file a motion seeking leave to amend their Original Petition, "the contracted forum should decide whether to allow the amendment and this Court will not substitute its discretion for the contracted forum's discretion." *Marshall v. Maropco, Inc.*, CIVIL ACTION NO. 4:16-CV-2731, 2016 WL 6820391, at *2 (S.D. Tex. Nov. 17, 2016).  If the contracted court allows amendment, and subsequently determines that the non-signatory parties are not bound by the forum-selection clause, the non-signatory parties may "move to sever the claims against them and transfer the severed portion of the case back to this Court" if they so desire.  *Id.* at *3 n.6.

### D. Arbitration

"In addition to transferring this litigation to the Northern District of Illinois," Defendants ask the Court to "compel the Plaintiffs to engage in binding arbitration of their claims against Defendants in DuPage, Illinois, as agreed to in the arbitration clause set forth in the Dealer Agreement."  Defs.' Br. 15.  Defendants further allege that "[a]s a signatory to the Dealer Agreement, Bruckner indisputably is bound by the valid arbitration agreement" and under equitable estoppel principles, Bruckner Leasing and ARC are similarly bound.  *Id.* at 18.  Because the undersigned has determined that transfer is appropriate, the Court declines Defendants'

---

[13] These grounds are in addition to the general proposition that non-signatories are bound by the terms of a contract simply by virtue of their relationship to the transaction, including their general knowledge of the agreement. *See, e.g.*, *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 519 (5th Cir. 2006) (noting non-signatory party's "conce[ssion] to the district court" that it was aware of the contract between the signatory parties and holding that non-signatory parties are bound when they knowingly exploit a contract containing a forum-selection provision); *Solargenix Energy, LLC*, 17 N.E.3d at 185 ("A nonsignatory impliedly consents to the forum selection clause via its connections with dispute, the parties, and the contract or contracts at issue.").

[14] The Court further notes this accomplishes the Plaintiffs expressed desire, though most likely not in the form preferred, to "serve judicial efficiency . . . [and] hear Plaintiffs' claims collectively." *See* Pls.' Resp. 10.

invitation to compel arbitration. The Court will not substitute its judgment for the contracted court's judgment. *See Marshall*, 2016 WL 6820391, at \*2. The undersigned therefore recommends that the United States District Judge deny, without prejudice, Defendants' motion to compel arbitration.

### E. Dismissal

Finally, Defendants ask the Court to dismiss Plaintiffs' claims with prejudice under Federal Rule of Civil Procedure 12(b)(3) "in the event that [the Court] has not otherwise ordered transfer of the matter to the Northern District of Illinois[]." Defs.' Br. 21. Having determined that the Court should grant Defendants' motion to transfer, the undersigned recommends that the district judge deny Defendants' request to dismiss Plaintiffs' claims.

### III.   Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **GRANT in part** the pending Joint Motion to Transfer Venue and Compel Arbitration, or, Alternatively, to Dismiss Plaintiffs' Original Petition. ECF No. 9. Specifically, the magistrate judge recommends that the district judge:  grant Defendants' request to transfer the case to the Northern District of Illinois, Eastern Division; deny without prejudice Defendants' request to compel arbitration; and deny Defendants' alternative request to dismiss the case with prejudice.

### IV.   Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made,

state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: October **30**, 2020

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**